**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

**UNITED STATES OF AMERICA**

                    -against-

                                                        **S5-17-CR-350(KBF)**

**EMIL SOSUNOV,**

                    **Defendant.**


-------------------------------------------------------------X




**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT EMIL SOSUNOV'S PRETRIAL MOTIONS**




                                        THE MIRVIS LAW FIRM, P.C.
                                        28 Dooley Street
                                        Suite 301
                                        Brooklyn, New York 11235
                                        Ph:     (718) 934 – 4141
                                        Fax:    (718) 228 – 8408
                                        Mirvis.tony@gmail.com

                                        *Attorney for Defendant*
                                        *Emil Sosunov*

I.   PRELIMINARY STATEMENT ..................................................................................... 3

II.   INTRODUCTION ......................................................................................................... 3

III.   FACTUAL BACKGROUND ........................................................................................ 4

IV.   THE ARREST ............................................................................................................... 5

    A.   SOSUNOV WAS ARRESTED UNLAWFULLY AND WITHOUT PROBABLE CAUSE.................... 5
    B.   LEGAL STANDARD.................................................................................................... 5
    C.   THE SOSUNOV COMPLAINT ...................................................................................... 6
    D.   THE COMPLAINT LACKED PROBABLE CAUSE............................................................. 9

V.   THE APARTMENT SEARCH ....................................................................................10

    A.   SEARCH WARRANT FOR 2740 CROPSEY AVENUE, APARTMENT 3J ...........................10
    B.   STATEMENT OF FACTS ............................................................................................10
    C.   STANDING..............................................................................................................12
    D.   THE SEARCH WARRANT WAS INVALID ....................................................................12
    E.   SAFE AND THREE CELLPHONES ..............................................................................13
    F.   THE ENVELOPES ....................................................................................................14
    G.   THE PILL BOTTLES .................................................................................................15
    H.   GOOD FAITH EXCEPTION DOES NOT APPLY .............................................................16
    I.   CONCLUSION .........................................................................................................17
    J.   FRANKS HEARING...................................................................................................17

VI.   THE CELLPHONE LOCATION WARRANT ...........................................................19

    A.   WARRANT AND ORDER FOR CELLPHONE ASSIGNED CALL NUMBER 718-916-5940 .........19
    B.   WARRANT LACKS PROBABLE CAUSE ......................................................................20

VII.   CONCLUSION ...........................................................................................................21

## I.      PRELIMINARY STATEMENT

Defendant Emil Sosunov ("Sosunov") respectfully submits this Memorandum of Law in support of his pretrial motions for an order: (I) Suppressing all observations made during the unlawful arrest of Emil Sosunov on October 27, 2017; (II) Suppressing all evidence derived from the execution of a defective search warrant, and the unlawful search and seizure of Mr. Sosunov's home, located at 2740 Cropsey Avenue, Apartment 3J, Brooklyn, New York on or about October 27, 2017; (III) Suppressing all evidence derived from a warrant and Order for cellphone location information and pen register information for the cellphone assigned call number 718-916-5940, issued on or about October 26, 2017 by the Honorable United States Magistrate Judge Ronald L. Ellis; (IV) Suppressing all evidence derived from the execution of search warrants for the cellular telephones seized by the Government during the execution of the search warrant on Mr. Sosunov's residence on October 27, 2017; and (V)  Granting such other relief this Court deems just and proper.

## II.     INTRODUCTION

Mr. Sosunov was arrested on October 27, 2017 and charged by Complaint with Conspiracy to distribute and possess with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846. Mr. Sosunov is charged with conspiring with others to distribute oxycodone. (See attached Complaint).

On December 14, 2017 an Indictment (S5-17-CR-350(KBF)) was filed charging Mr. Sosunov with (1) Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance in violation of Title 21, United States Code, Section 841 and 846.

### III.    FACTUAL BACKGROUND

Upon information and belief, on or about October 17, 2017, at approximately 11:30 a.m., while performing surveillance of a vehicle, a law enforcement agent observed Mr. Sosunov enter into a vehicle in which William Thomas was already sitting. Shortly thereafter, the same agent observed Dr. Dovlatyn approach the front passenger-side window, where Sosunov was seated. A different agent observed Dr. Dovlatyn approach the front passenger window and subsequently observed Sosunov provide what appeared to be a large amount of currency to Dr. Dovlatyn. Mr. Sosunov then exited the vehicle and left the location. (Complaint ¶ 11).

Law enforcement further alleged that after the above interaction, they observed Sosunov meet with an unidentified female in the vicinity of a pharmacy located on Surf Avenue, Brooklyn, New York. After meeting with the female, Sosunov waited outside of pharmacy, while the female entered the pharmacy. Shortly thereafter, the female gave Sosunov a black plastic bag. Sosunov then departed the location. (Complaint ¶12).

Upon information and belief, a law enforcement review of prescription records provided by the New York State Bureau of Narcotics Enforcement, found that between April 20, 2016, and June 13, 2017, Dr. Dovlatyn issued approximately fifteen prescriptions to two patients, listing the last name "Sosunov" for 150 30-milligram oxycodone pills, for a total of approximately 2,250 oxycodone pills. (Complaint ¶ 15).

Finally, on October 17, 2017, at approximately 5:15 pm, Mr. Sosunov entered the MCC to visit his wife's godfather and alleged coconspirator Alex Mitselmakher. (Complaint ¶ 16).

On October 27, 2017, law enforcement entered into Sosunov's apartment to

execute an arrest warrant. Sosunov was arrested without incident and law enforcement agents applied for a search warrant based on certain items they claimed to have observed in plain sight during the arrest of Mr. Sosunov.

## IV.     THE ARREST

### a.     Sosunov Was Arrested Unlawfully and Without Probable Cause

On October 26, 2017, the Honorable Ronald L. Ellis, United States Magistrate Judge, Southern District of New York issued a Sealed Complaint (Complaint") that authorized the arrest of Emil Sosunov. The arrest of Mr. Sosunov was effectuated in the early morning hours of October 27, 2017.

While the Complaint clearly makes out probable cause to arrest Dr. Varuzhan Dovlatyn and William Thomas, it is respectfully submitted that the Complaint fails to allege probable cause to arrest Mr. Sosunov. The allegations regarding Mr. Sosunov involve several observations made by law enforcement on October 17, 2017. However, the accusations do not allege any criminal conduct by Mr. Sosunov.

### b.     Legal Standard

The purpose of the Complaint is to enable the appropriate magistrate to determine whether the probable cause required to support issuance of a warrant exists. *Giordenello v. United States,* 357 U.S. 480 (1958). The magistrate issuing the warrant must "not serve merely as a rubber stamp for the police." *Aguilar v. Texas*, 378 U.S. 108, 111, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). A Complaint must provide foundation for magistrate's neutral judgment that resort to further criminal process is justified; it must provide

affiant's answer to magistrate's hypothetical question, "What makes you think that the defendant committed the offense charged?" *Jaben v. United States*, 381 U.S. 214, 85 S. Ct. 1365, 14 L. Ed. 2d 345 (1965)

A magistrate, "when considering whether there is probable cause to issue a search warrant can only rely on what is before her. All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath" *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008).

**c.      The Sosunov Complaint**

The Complaint sets out several paragraphs that describe the background of Oxycodone and Oxycodone diversion. However, nothing in these paragraphs is connected to Sosunov or the charges against him.

Next the Complaint describes the "Background to Investigation of Co-Conspirators Dovlatyan and Thomas" These paragraphs 6-10 of the Complaint clearly describe the criminal conduct committed by Dovlatyn and Thomas. However, again there is nothing that links Sosunov to them in these paragraphs.

Finally on page 6 of the Complaint, paragraph 11, the "Investigation of the Defendant" is found. However, criminal activity is not asserted. In Paragraph 11, Agent Hanratty affirms that he observed Emil Sosunov enter the vehicle of Thomas. He then observed Dr. Dovlatyn approach the front passenger side window, where Sosunov was seated, and another FBI Agent allegedly observed Dovlatyn approach the front passenger window and subsequently observed Sosunov provide what appeared to be a large amount of currency to Dovlatyn. This occurred at 11:30 am on October 17, 2017. Neither Dovlatyn nor Sosunov are stopped immediately after their brief meeting. The Complaint

does not indicate where Dovlatyn went after he met with Sosunov. Did he go back to his office? Did he go to the bank? The Complaint does not provide that information to the magistrate. However, the complaint then states that at 2:30 pm on October 17, 2017, three hours after he met with Sosunov, Dovlatyn is arrested and is found to be in possession of $2,100 in United States currency. The Complaint again does not assert that these are the funds that the Agent claims he saw Sosunov give to Dovlatyn. The magistrate must assume that these are the same funds that were given by Sosunov. There are no facts alleged that would lead the magistrate to the conclusion that these are the funds that Sosunov gave Dovlatyn. The Magistrate could just as easily have assumed that Dovlatyn went back to his office, saw six clients and wrote out six prescriptions to earn $2,100. The magistrate could have come to that conclusion just as easily as the conclusion that the $2,100 found on Dovlatyn was the same cash given to him by Sosunov. Further, even if Sosunov did in fact give Dovlatyn the $2,100 he is arrested with, the complaint does not allege criminal conduct. There is nothing in the Complaint that states Sosunov was purchasing prescriptions for the money he tendered. There is no observation or allegation that Dovlatyn or Thomas gave Sosunov prescriptions for the cash. There is no crime alleged in paragraph 11 of the Complaint.

After meeting with Thomas and Dovlatyn, Sosunov left and was observed going to a pharmacy on Surf Avenue. Paragraph 12 of the Complaint alleges that the Agents observed "Sosunov meet with an unidentified female in the vicinity of a pharmacy located on Surf Avenue, Brooklyn, New York. After meeting with the female Sosunov waited outside the pharmacy while the woman entered the pharmacy. Shortly thereafter,

Agent-1 observed the woman exit the pharmacy and provide a plastic bag to Sosunov, who then departs the area in a vehicle.

This paragraph also fails to allege any criminal conduct by Sosunov. There is no allegation that Sosunov handed the woman a prescription or anything at all. There is no allegation that the Agents confirmed that Sosunov was picking up a prescription of oxycodone. The plastic bag could have just as easily contained a bottle of over the counter Motrin as it could contain some controlled substance. However, the magistrate is not provided with sufficient information to find probable cause that a crime was committed. The facts clearly do not support a finding of probable cause.

Paragraph 15, perhaps gets closer to alleging criminal conduct, however, it also fails. The paragraph alleges in sum and substance that Sosunov and another person (wife) with the same last name that resides at the same address as he does received approximately fifteen prescriptions for 150 30-milligram oxycodone pills for the period from April 20, 2016 through June 13, 2017. During a period of approximately sixteen months Sosunov and his wife received a total of fifteen prescriptions. However, there is no allegation that all prescriptions issued by Dovlatyn were purchased and not prescribed for legitimate medical purposes. The allegations against Dovlatyn do not allege that every single prescription he wrote was for illegal purposes. The fact that prescriptions were written by Dovlatyn to Sosunov and/or his wife during the course of a sixteen-month period, without further facts or proof does not rise to probable cause to arrest.

Finally, paragraph 16 alleges that Sosunov went to MDC to visit CC-1, a co-conspirator that the Complaint alleges had substantial ties and communications with both Dovlatyn and Thomas. However, that is also not evidence of a crime or conspiracy. The

Affiant failed to advise the magistrate that CC-1 is Sosunov's wife's godfather and that Sosunov brought CC-1's two young children with him for the visit. While the Affiant failed to notify the magistrate of the potential innocent reason for the visitation, he likewise failed to allege that the purpose of Sosunov vising MDC was criminal in nature.

Not one of the allegations made out against Sosunov is sufficient for the magistrate to find probable cause. Further, even when viewing all of the allegations together, they still fail to make out probable cause for a neutral and detached magistrate to find probable cause to arrest.

**d.     The Complaint Lacked Probable Cause**

Probable cause is a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules" *United States v. Tranquillo*, 606 F. Supp. 2d 370 (S.D.N.Y. 2009).

Hanratty's Affidavit was insufficient to provide a substantial basis for the magistrate judge to find probable cause to issue the Complaint and authorize an arrest because it was the type of affidavit described in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, (1984), as a bare bones affidavit.

The Complaint/Affidavit is a bare bones affidavit because it contains only "suspicions, beliefs or conclusions without providing some underlying factual circumstances regarding veracity, reliability and basis of knowledge." *United States v. Laughton,* 409 F.3d, 748-49 (6th Cir. 2005).

The Complaint/Affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. "An affidavit is so lacking in indicia of probable cause...when it fails to provide a colorable argument for probable

9

cause." *United States v. Underwood*, 725 F.3d 1076, at 1085 (9th Cir. 2013). A "colorable argument for probable cause" is one that would allow "thoughtful and competent judges" to disagree over whether probable cause exists. *Id.* (internal quotation marks omitted).

**WHEREFORE,** the arrest of Mr. Sosunov, although done pursuant to authorization from magistrate judge Ellis, was unlawful because the allegations sworn to by Agent Hanratty in support of the issuance of the Complaint do not support a finding of probable cause. Further, all fruits that were obtained, as a result of the unlawful arrest must be suppressed.

## V.     THE APARTMENT SEARCH

### a.     Search Warrant for 2740 Cropsey Avenue, Apartment 3J

Sosunov moves to suppress all physical items, observations, other information, proximate leads, and any fruits therefrom resulting from a search pursuant to a search warrant issued by the Honorable Sanket J. Bulsara, United States Magistrate Judge for the Eastern District of New York on October 27, 2017. (See Attached Search Warrant). The search warrant was issued based on an Affidavit executed and submitted by FBI Special Agent Bruce Turpin.

### b.     Statement of Facts

On October 27, 2017, in the early morning hours, FBI Special Agent Bruce Turpin and other law enforcement agents executed an arrest warrant for Emil Sosunov. Mr. Sosunov was arrested and taken from his home located at 2740 Cropsey Avenue, Apartment 3J, Brooklyn, New York ("Subject Premises") without incident. Law

enforcement agents applied for a search warrant based on certain items they claimed to have observed in plain sight during the arrest of Mr. Sosunov.

During the arrest of Mr. Sosunov at 2740 Cropsey Avenue, Apartment 3J, Brooklyn, New York, FBI Special Agent Bruce Turpin affirms that he saw the following:

(1) On the kitchen counter within the Subject Premises two prescriptions for oxycodone, each bearing the name of "Varuzhan Dovlatyn," the doctor and coconspirator described in the Complaint;

(2) On the kitchen counter within the Subject Premises an unmarked prescription pill bottle with as-yet unidentified pills, located next to the two oxycodone prescriptions bearing Dovlatyn's name, as described above.

(3) On a window ledge near a door leading to an exterior balcony, multiple envelopes appearing to contain United States currency with writings on the face of each envelope. The writing appears to provide a "ledger" and amounts either paid by or owed to various narcotics customers. For example, one envelope reads, in part, "UPL, Lasha ... Zan, Joseph+ 60 orange 5,180 + 600 = 5,780." From my review of records provided by the New York State Bureau of Narcotics Enforcement, I have learned, among other things, that Varuzhan Dovlatyn prescribed oxycodone to a patient using the name "Lasha Uplisashvili" (*i.e.,* "UPL, Lasha") approximately eleven times between in or about July 2016 and June 2017. Furthermore, based on my training and experience, and my experience investigating the sale of prescription pills, in particular, I know that distributors of illicit controlled prescription pills frequently refer to such pills using a color code, rather than the chemical or

trade name of particular drugs (*e.g.,* "60 orange").

(4)  A locked safe in a hallway closet within the subject premises;

(5)  On two separate nightstands inside the Subject Premises, three separate cellular telephones (two Blackberry and one iPhone smartphones).

### c.      Standing

An illegal search violates the Fourth Amendment rights of those persons who had "legitimate expectations of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). While the fact that the search yielded evidence that the prosecution intends to use against the defendant does not alone give the defendant "standing" to challenge the search, seizure and the admission of unconstitutionally obtained evidence. Sosunov has standing to challenge the search of his home located at 2740 Cropsey Avenue, Apartment 3J, Brooklyn, New York ("Subject Premises").

Sosunov lives at the Subject Premises with his wife. "A homeowner always has standing to challenge violations of the Fourth Amendment that occur in the home, regardless of whether or not he is present when the violation occurs." *Alderman v. United States*, 394 U.S. 165 (1969).

### d.      The Search Warrant Was Invalid

The arresting Agents over-stepped their authority during the execution of the arrest warrant. The Agents armed with only an arrest warrant converged on the subject premises in the early morning hours of October 27, 2017. Pursuant to their authorization they knocked on the door. Sosunov's wife answered the door and inquired as to what this was about. The Agent stated that they had an arrest warrant for Mr. Sosunov. Mr.

Sosunov's wife said she would go and get Mr. Sosunov, however before she could go get him the agents forced their way into the apartment. Mr. Sosunov's Fourth Amendment right to privacy was violated by the Agents unlawful intrusion into his apartment. "An individual subject to an arrest warrant retains a robust privacy interest in the home's interior; that privacy interest is protected by requiring law enforcement officers executing an arrest warrant to knock, announce their identity and purpose, and provide the arrestee with the opportunity to come to the door before they barge in, and, where evidence is obtained because officers violated the knock-and-announce rule in executing an arrest warrant at the arrestee's home, the exclusionary rule retains its remedial force. *United States v. Weaver*, 808 F.3d 26 (D.C. Cir. 2015).

The Agents exceeded their authority and as a result of their Fourth Amendment violation they were able to observe certain items in plain sight. The Government then sought a search warrant based on the observations made during their unlawful entry into the subject premises. The items the agents' saw should be stricken from the search warrant affidavit. "Where it applies, the exclusionary rule prohibits the government from introducing in its case in chief evidence obtained in violation of the Fourth Amendment." *United States v. Weaver*, 808 F.3d 26 (D.C. Cir. 2015)

e.      **Safe and Three Cellphones**

Special Agent Turpin alleges that there was probable cause to search the apartment based on his observation of certain items in plain view. Several of the items described in the warrant clearly are not instrumentalities, fruits and evidence of the subject offense of conspiracy to distribute oxycodone. For example, "a locked safe in the hallway closet within the subject premises" is clearly not evidence of criminal conduct.

There is no allegation in the affidavit that the safe was used to commit a crime or that it stores the proceeds of a crime. There was no nexus drawn between the alleged criminal conduct and the presence of a safe in the subject apartment. Similarly, "on two separate nightstands inside the subject premises, three separate cellular telephone (two Blackberry and one IPhone smartphones)" is not instrumentalities, fruits or evidence of the subject offense. The affidavit fails to allege whom the phones belong to, whether they were used to commit the subject offense. The affidavit is bear with regards to allegations regarding why the above two items are instrumentalities or evidence of the subject offense.

### f.     The Envelopes

The Agent alleges that he observed "On a window ledge near a door leading to an exterior balcony, multiple envelopes appearing to contain United States currency with writings on the face of each envelope." This observation is made during the execution of the arrest warrant for Mr. Sosunov. However, in order to make this observation, the agent exceeded the allowable scope of the arrest warrant. "Unlike officers armed with a search warrant, officers armed solely with an arrest warrant do not have the authority to examine any papers, gather any effects, or search the various nooks and crannies of an arrestee's home." and "They are authorized to make only the limited intrusion into the home necessary to locate and seize the arrestee; once they locate the arrestee, officers may intrude no further." United States v. Weaver, 808 F.3d 26 (D.C. Cir. 2015).

The envelopes were piled up one on top of the other. There is no way the Agent could have seen "writing on the face of each envelope" without manipulating and/or moving the envelopes. The Agent was not authorized to do anything other then arrest Mr. Sosunov. However, he clearly exceeded the scope of the arrest warrant. As such Mr.

Sosunov's Fourth Amendment rights were violated and the envelopes should like wise be stricken from the search warrant and suppressed from use in the Government's case.

### g.    The Pill Bottles

Mr. Sosunov challenges the seizure of the pill bottles on the basis that the Agents exceed their authority by coming into the apartment without permission or authorization. Mr. Sosunov was trying to surrender himself at the door, yet the officers gave him no chance and barged into his apartment without permission. *See United States v. Weaver*, 808 F.3d 26 (D.C. Cir. 2015) holding that "The knock-and-announce does not require government agents to make every effort to enable an arrestee to open the door in a manner that does not expose the interior of his home to view, exit the dwelling, and close the door, but they must give him an opportunity to come to the door." and "If an arrestee surrenders himself at the door of his home, officers cannot make the more extensive intrusion into the home that they are authorized to make when an arrestee does not come to the door; consequently, the knock-and-announce rule protects an arrestee's interest in shielding intimate details of his home from the view of government agents." *United States v. Weaver*, 808 F.3d 26 (D.C. Cir. 2015).

The Government violated the knock and announce rule, thus their observations could not serve as lawful basis for subsequent issuance of a search warrant because they were not legally present in Mr. Sosunov's home. "Exclusionary rule was appropriate remedy for knock-and-announce violation in execution of arrest warrant at arrestee's home; although agents viewed marijuana once in apartment, their observations could not serve as lawful basis for subsequent issuance of search warrant because they were not legally present in arrestee's home, and application of exclusionary rule would result in

appreciable deterrence of constitutional violations."

### h.     Good Faith Exception Does Not Apply

*United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), which held that "Notwithstanding the reasonable reliance on a search warrant exception to Fourth Amendment exclusionary rule, suppression is an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *See also, United States v. Colkley,* 899 F.2d 297, 300 (4th Cir.1990), where the court held *"*Accordingly, "(a) warrant that violates *Franks* is not subject to the good faith exception to the exclusionary rule announced in [Leon]." *See also, United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), which held that "Police officer cannot be found to have relied on a search warrant in good faith for purposes of the good faith exception to the exclusionary rule where the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth and where the supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

The information submitted in the Complaint by Special Agent Hanratty was incomplete and misleading. The Affidavit was a bear bones affidavit and lacked probable cause. Similarly, the Affidavit in support of the search warrant submitted by Special Agent Turpin was likewise incomplete and misleading. Further, the affidavit was based on observations that were obtained illegally when the Agents unlawfully entered Sosunov's apartment to arrest him. Finally, Agent Turpin lied about how the envelopes were positioned when he claimed to have observed them on the windowsill. The Agent

had no authority to be in the apartment at all, however, Agent Turpin confounded the error by touching and moving paperwork without the requisite warrant being issued. Both Agent Turpin and Hanratty are professionals and they are charged with knowing what they can and cannot do when executing an arrest and/or search. Therefore, the *Leon* Good Faith Exception is not available to cure the Government's illegal conduct.

### i.      Conclusion

The fruits of the apartment search warrant must be suppressed. The arrest warrant was issued without probable cause and the supporting affidavit is bear bones. The arresting Agents violated the requirements of knock and announce thereby violating Mr. Sosunov's Fourth Amendment privacy rights. The observations of contraband made by the Agents when they unlawfully entered must be suppressed and cannot be used in a subsequent search warrant application/affidavit. The Agents exceeded the scope of the arrest warrant by manipulating the envelopes that were stacked on the windowsill.

Wherefore, all items seized pursuant to the search warrant must be suppressed.

### J.      Franks Hearing

Although a search pursuant to a warrant is presumed valid, a defendant may, in certain circumstances, challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search; in order to invoke this doctrine, a defendant must show that there were intentional and material misrepresentations or omissions in the agent's warrant affidavit. *United States v. Keith*, 183 F. Supp. 3d 427 (S.D.N.Y. 2016).

Under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, (1978) and its progeny, if a search warrant contains a false statement or omission, then the fruits of the search must be suppressed if the defendant makes a substantial preliminary showing: (1) that the false statement or omission was knowingly and intentionally, or with reckless disregard for the truth, included by the government in a search warrant affidavit; (2) that the information was material; and (3) that with the affidavit's false or omitted material aside, the affidavit's remaining content is insufficient to establish probable cause.

To suppress evidence obtained pursuant to a search warrant affidavit containing erroneous and or false information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding. *United States v. Lambus*, 221 F. Supp. 3d 319 (E.D.N.Y. 2016), opinion withdrawn in part on reconsideration, 251 F. Supp. 3d 470 (E.D.N.Y. 2017). *See also, United States v. Ferrara*, 771 F. Supp. 1266, 1273 (D. Mass. 1991) where the court held that "when *Franks* applies a defendant must satisfy two requirements to obtain suppression based upon possible governmental misconduct in connection with obtaining a warrant: first, that the information at issue was known by the government to be false or was presented with reckless disregard for its truth; *and* second, that the information was essential to the issuance of the warrant. These standards also apply when information has been omitted from an application or affidavit."

Special Agents Hanratty and Turpin misled the court with lies and omissions in an attempt to bolster the non-existent probable cause. They cannot now claim the reasonable reliance exception to the Fourth Amendment.

## VI.      THE CELLPHONE LOCATION WARRANT

### a.      Warrant and Order for Cellphone Assigned Call Number 718-916-5940

On October 26, 2017, the same date the Government sought and obtained the Sealed Complaint/Arrest Warrant for Mr. Sosunov, they sought and obtained a Warrant and Order for Prospective and Historical Location Information for the Cellphone Assigned Call Number 718-916-5940. (See attached Warrant and Order for Cellphone Location Data). The Affidavit in Support was sworn to by Special Agent Hanratty and the allegations made were nearly identical to the allegation made in the Complaint. The only difference between the two is that in the Affidavit in Support of a Warrant for Cellphone information contains two additional paragraphs. The first one states "Based on information provided by me to MANAGER-1 on or about October 16, 20I7, prior to the meeting between MANAGER-1 and SOSUNOV in Vehcile-1, as described above, I understand that the Target Cellphone belongs to SOSUNOV, as corroborated by consensually recorded text messages placed to the Target Cell phone by MANAGER -1 in advance of the meeting in Vehicle-1, described above." (Paragraph 20). It also has an additional paragraph that states "Law enforcement has been unsuccessful at conducting surveillance of SOSUNOV outside of the meeting on or about October 17, 20I7, described above. The requested information will, among other things, assist law enforcement in identifying SOSUNOV's location in advance of arrest, identifying which

pharmacies SOSUNOV visits and has visited in connection with the conduct under investigation and his interaction with, among others, PHYSICIAN-1, MANAGER-1, Office-1, CC-7 and the two "patients" residing at Address-2."

b.     **Warrant Lacks Probable Cause**

This warrant lacks probable cause for the same reasons as stated above. The addition of the two paragraphs does not create sufficient probable cause. For probable cause to exist there must be a nexus between the contraband to be seized or suspected criminal activity and the place to be searched. *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005). This lack of a nexus cripples the affidavit and when this connection is wholly absent, the affidavit and resulting warrant are so lacking in indicia of probable cause "as to render official belief in its existence entirely unreasonable."

The second fatal flaw of the location warrant is that it is supported by an entirely conclusory affidavit that failed to provide any factual basis for the judicial officer to determine the presence of probable cause. In *Giordenello v. United States*, 357 U.S. 480 (1958) the Supreme Court ruled, "The commissioner must judge for himself the persuasiveness of the facts relied on by complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that person whose arrest is sought has committed a crime." In *Illinois v. Gates*, 462 U.S. 213 1983, the Supreme Court reaffirmed that conclusory affidavits were insufficient to establish probable cause, "it does not suffice to provide, "a mere conclusory statement that gives the [factfinder] virtually no basis at all for making a judgment regarding probable cause. "Wholly conclusory affidavits have been condemned and their rubber-stamping by lazy judicial officers reviled. In 2014, a

court in the Second Circuit suppressed evidence because the affidavit was based on conclusory assertions, "To uphold the execution of a search warrant merely upon the assertion of an officer…would be to legitimize the sort of unmediated police invasions of homes that the fourth amendment was adopted to prevent... the reckless or negligent conduct of the officers here is the type of conduct that can, and should be deterred by application of the exclusionary rule." *United States v. Rutherford*, 71 F. Supp. 3d 386 (S.D.N.Y. 2014).

**Wherefore**, the cellphone search warrant lacks probable cause and all evidence derived therefrom must be suppressed

## VII.    CONCLUSION

**WHEREFORE**, Defendant respectfully prays for an order granting the above-requested relief and any additional relief this Honorable Court deems just and proper.

Dated: Brooklyn, New York
          March 2, 2018

Respectfully submitted,

**THE MIRVIS LAW FIRM, P.C.**

/s/ Tony Mirvis

By:    Tony Mirvis, Esq. (TM-2890)
         Attorney for Defendant
         28 Dooley Street, 3rd Floor
         Brooklyn, New York 11235
         (718) 934-4141 (Tel)
         (718) 228-8408 (Fax)
         Mirvis.tony@gmail.com