UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

                 -against-

                                                  S5-17-CR-350(KBF)

EMIL SOSUNOV,

                 Defendant.


------------------------------------------------------------X


**MEMORANDUM OF LAW IN REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT EMIL SOSUNOV'S PRETRIAL MOTIONS**


THE MIRVIS LAW FIRM, P.C.
28 Dooley Street
Suite 301
Brooklyn, New York 11235
Ph:    (718) 934 – 4141
Fax:   (718) 228 – 8408
Mirvis.tony@gmail.com

*Attorney for Defendant
Emil Sosunov*

**Table of Contents**

I.   CORRECTION .................................................................................................................. 3

II.  CELLPHONES ARE NOT AUTOMATICALLY EVIDENCE OF CRIMINAL CONDUCT ........................................................................................................................ 5

III. THE SEARCH WARRANT LACKED PROBABLE CAUSE ..................................... 6

ALL ITEMS SEIZED MUST BE STRICKEN ......................................................................... 6

IV.  CONCLUSION ................................................................................................................. 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-                                     S5-17-CR-350(KBF)

EMIL SOSUNOV,

        **Defendant.**


-----------------------------------------------------------X

**MEMORANDUM OF LAW IN REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT EMIL SOSUNOV'S PRETRIAL MOTIONS**

    This Memorandum of Law is submitted on behalf of defendant Emil Sosunov, in reply to the Government's response in opposition, to Sosunov's pre-trial motions, dated March 2, 2018. For the following reasons set forth below, the Government's response is further attestation that Emil Sosunov's motions should be granted.

## I.    CORRECTION

    Defendant's Memo of Law (Dkt. No. 602, P. 12) incorrectly states that "Sosunov's wife answered the door and inquired as to what this was about. The Agent stated that they had an arrest warrant for Mr. Sosunov. Mr. Sosunov's wife said she would go and get Mr. Sosunov, however before she could go get him the agents forced their way into the apartment." Defendant's Affidavit (Dkt. No. 601) correctly states what occurred when Mr. Sosunov was arrested on October 27, 2017 "The Agents knocked on the door, I asked who is it, the Agents said FBI, I opened the door, the Agents grabbed me, put me up against the wall outside of my apartment and put handcuffs on me. They then proceeded inside of my apartment without permission or authorization."

Upon information and belief, while Sosunov was getting handcuffed, his wife, stood in the doorway and blocked the entryway. Sosunov's wife asked whether the Agents had a search warrant, the Agents said that they didn't and proceeded to force their way past Mr. Sosunov's wife and into the subject apartment. Then the Agent(s) that arrested/handcuffed Sosunov steered Sosunov into the subject premises and in various directions until Sosunov directed them to his bedroom. After Sosunov got dressed the Agents brought him back into the living room. Sosunov observed the Agents looking through the envelopes that were previously stacked on the window sill and he saw the Agents taking pictures of the envelopes. Sosunov also observed that the door of the closet where his safe was hidden had been opened wide by the Agents and the Agents asked Sosunov to unlock the safe for them. While Sosunov was taken to his bedroom to change, his wife observed the other Agents conduct their protective sweep of the apartment. Sosunov's wife saw the Agents opening up all the doors and touching the envelopes that were stacked on the next window sill. She also observed an Agent remove a folded paper that was held up on the refrigerator by a magnet, unfolded the paper, looked at it and then returned it to the same position on the refrigerator.

Irrespective of the mistake in Defendant's Memo of Law (Dkt. No. 602), the analysis of the Agents' conduct remains the same. Sosunov was arrested outside of his apartment pursuant to a Complaint. While Sosunov was getting handcuffed, three other Agents entered Sosunov's home without a warrant and without permission/consent of anybody that resided in the apartment. The Agents began a search under the guise of it being a protective sweep. Further, even if the Agents' had the authority to enter the apartment and conduct a protective sweep in order to allow Mr. Sosunov to get dressed,

the Agents exceeded their authority by moving and manipulating items that could not reasonably be deemed dangerous to the Agents. They had no authority to touch, manipulate, pick up, move around and photograph the envelopes that were stacked on the window sill under the guise of or in the furtherance of the protective sweep they were conducting. Likewise, the Agents exceeded their authority by trying to manipulate a locked safe that they saw in a hallway closet. Further, the Agent(s) had no authority to take from and unfold a folded paper that was affixed to the refrigerator by a magnet. That conduct likewise exceeded the scope of the protective sweep.

## II.  CELLPHONES ARE NOT AUTOMATICALLY EVIDENCE OF CRIMINAL CONDUCT

The Government's argument is somewhat facetious in that they allege that three separate cellphone, found on two separate night stands is evidence of criminal conduct. The search warrant application does not allege that any of the phones that were seen in plain view in the subject premises were the same phone that the Agents saw Sosunov using on October 17, 2017 when he was allegedly conspiring with others to possess oxycodone pills. If true, many of the AUSA's and defense attorneys would find themselves on the wrong end of a search warrant. Upon information and belief, many prosecutors in both the State and Federal systems are given work phones, many have personal phones and many have spouses that also have one or more phones. I have a work phone and a personal phone and my wife has a phone she uses for work and personal uses. We keep the phones on each of our respective nightstands. How is Mr. Sosunov's possession of 3 phones on two night stands, in his home that he shares with his

wife, proof of criminal conduct while many AUSA'a and Government employees have the same items in their home and it is par for the course.

### III. THE SEARCH WARRANT LACKED PROBABLE CAUSE ALL ITEMS SEIZED MUST BE STRICKEN

The Government's response argues "Here, there is no specific challenge to the agent's observations of at least three additional items in plain view that, independent of the Envelopes, established probable cause to search the defendant's apartment pursuant to the search warrant: the Written Prescriptions[1], the Pill Bottle[2], and the Cellphones. See, e.g., *United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1999) ("Patently incriminating evidence that is in plain view during a proper security check may be seized without a warrant."). Taken together, these items plainly established a basis to believe that the defendant's apartment contained evidence and instrumentalities of the narcotics conspiracy with which he was charged. Both the Written Prescriptions and the Pill Bottle reflected that the defendant had, in fact, obtained oxycodone from Dovlatyn, exactly as the Complaint had alleged. The presence of multiple cellular telephones in the apartment comports, generally, with the need for narcotics dealers to compartmentalize their communications, and more specifically represented devices for which probable cause existed to believe that the defendant had used to communicate with Thomas, Dovlatyn,

---

[1] The Agents actually recovered pill bottles for pills that were prescribed by Dovlatyn, not written prescriptions from Dovlatyn. However, the discovery of the prescriptions pill bottles did not provide new information. The Agents knew that Dovlatyn wrote the Sosunov's 15 prescriptions over a 15-month period. The discovery of the pill bottles confirmed this known fact.

[2] A pill bottle by itself or with pills is not incriminating. The search warrant application did not allege that the pills were illegal or controlled.

and/or the woman whom the defendant sent into Pharmacy-2[3]. Thus, removing the "tainted" portion of the affidavit results in a warrant that incorporated the robust probable cause of the Complaint by express reference and was based on sufficient probable cause to search the premises for evidence of the narcotics conspiracy described in the Complaint[4]. As such, the motion to suppress evidence seized during this search should be denied.

The Government's argument is flawed in several ways. As discussed above, three cell phone on two nightstands in an apartment where a husband and wife reside clearly does not prove criminal conduct. Likewise, a locked safe in a hallway closet does not prove criminal conduct. The only items that were observed in plain view that may possibly be considered incriminating are the two prescriptions bottles for oxycodone that were prescribed by Varuzhan Dovlatyn to Sosunov and his wife. However, even those prescription bottles were not new evidence of criminal conduct. The Agents knew that Dr. Dovlatyn had been prescribing oxycodone to Sosunov and his wife from April 2016 through June 2013. The Complaint alleges that "Dovlatyn issued approximately fifteen prescriptions to two patients listing the last name "Sosunov" and Address-2 (Subject Premises) as their home address, for 150 30-miligram oxycodone pills, for a total of approximately 2,250 oxycodone pills."

Upon information and belief, the prescriptions written by Dovlatyn to the Sosunov's was not enough evidence/probable cause to obtain a search warrant when the

---

[3] As discussed above, the search warrant application failed to draw a nexus between the phones in the house and the phone used by Sosunov on October 17, 2017. There is clearly nothing that links the phones that were observed in the house on October 27, 2017 with any criminal conduct.
[4] Both the Complaint and the search warrant application list evidence that creates "Robust" probable cause. Rather, they both lack probable cause.

Government applied for and obtained an arrest warrant. Actually, the possession of the prescription pills in their residence is a favorable factor in that the magistrate judge could have assumed that both Sosunov and his wife were actually using the medication to deal with pain management. It would have been much more incriminating if a prescription was recently filled and the pills were nowhere to be found and leading to the assumption that the pills were being sold.

The Complaint does not allege that every single prescription written by Dovlatyn was a bad/illegal/purchased prescription. The Complaint alleges that an Agent observed Sosunov give Dovlatyn "what appeared to be a large amount of currency." That statement is incredibly vague in that a large amount of currency could be 100 singles, 50 twenties, 20 hundred dollar bills. Only the Agent that saw the alleged transaction (no photos or videos) observed what was handed to Dovlatyn by Sosunov. The Agent did not observe Dovlatyn or Thomas give Sosunov any prescriptions. Lastly the money that was allegedly given to Dovlatyn by Sosunov didn't have any readily visible characteristics, like in brown paper bag or wrapped in a roll, or bound with rubber bands. The complaint is silent as to whether the $2,100 recovered from Dovlatyn looked anything like the money Sosunov allegedly tendered. However, the magistrate judges for both the Complaint and the search warrant applications are led to believe that the $2,100 that was recovered from Dovlatyn when he was arrested three hours after he met with Sosunov was the same large amount of currency the Agent allegedly observed Sosunov give to Dovlatyn. Thus, there is no proof that Sosunov was purchasing prescriptions from Dovlatyn like the undercover agents/officers did. The mere fact that Dovlatyn sold prescriptions to some of his "patients" does not mean that every single prescription he wrote was illegal/purchased

## IV.   CONCLUSION

**WHEREFORE,** based on all the reasons set forth above and in the initial motion, Sosunov's Pretrial Suppression Motions must be granted in their entirety.


Dated: Brooklyn, New York
       March 23, 2018

                                    Respectfully Submitted,


                                    /s/ Tony Mirvis
                              By:   Tony Mirvis, Esq.(TM-2890)
                                    Attorney for Mr. Sosunov