**ALBERT Y. DAYAN**      80-02 Kew Gardens Rd., # 902, Kew Gardens, N.Y. 11415
*Attorney at Law*        Tel: (718) 268-9400:     Fax: (718) 268-9404

May 31, 2019

The Honorable Loretta A. Preska
Senior United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York. New York 10007

> Re: United States v. Emil Sosunov
> S5 17 Cr. 350 (LAP)

Dear Judge Preska:

This Sentencing Memorandum is submitted in a letterform in connection with the upcoming sentencing of Mr. Sosunov scheduled for 11:30 A.M. on June 11, 2019.

Pursuant to Fed. R. Crim. P. 32(i)(3) and 18 U.S.C. §3553(a), EMIL SOSUNOV respectfully submits to this Honorable Court for consideration, relevant information for determination of sentence that is no greater than necessary to achieve the goals of sentencing under § 3553(a)(2). In support, the Defendant states as follows:

As an initial matter, the Defendant pleaded guilty before this Honorable Court on February 20, 2019 to Count 1 – Conspiracy to Distribute Oxycodone and Amphetamine in accordance with a plea agreement which stipulates the following: Pursuant to §2D1.1(a)(5) and §2D1.1(c)(4), because the offense involved Oxycodone of an aggregate quantity equal to at least 400 kg, but less that 700 kg, the Sentencing Guideline applicable to Count 1 is level is 26.

1

In view of Mr. Sosunov's timely acceptance of responsibility for his involvement in the charged offense, through his allocution and subsequent conduct, a 3 level reduction is warranted, pursuant to U.S.S.G. sec3E1.1(a). Mr. Sosunov has zero criminal history points. Accordingly, his criminal history category is 1. The Plea Agreement contemplates a likely adjusted offense level of 23. The advisory guideline range associated with the adjusted offense level is 46 to 57 months of imprisonment.

The following discussion on the subject of factors to be considered in sentencing Mr. Sosunov is not intended to minimize in any way the seriousness of the offense for which Emil has pleaded guilty to. Nor is it intended to minimize the effect of his crime on society at large. I respectfully submit that in keeping with the sentencing mandate under 18 U.S.C. Sec. 3553(a), mitigating factors exist in this case demonstrating that a sentence below the stipulated Guideline range is warranted. The undersigned as counsel for Mr. Sosunov submits that, in light of the decisions issued in cases such as United States v. Booker, 125 S.Ct. 738 (2005) and Kimbrough v. United States, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), this Court is free to issue a sentence in compliance with 18 U.S.C. § 3553 that is fair and based upon the specific facts of this case: specifically, that Emil's drug related crime was the direct result of his own addiction to the very powerful synthetic heroin known as Oxycodone. For the reasons here and after set forth, we are respectfully asking Your Honor to err on the side compassion and reason in this particular case where, alternate to incarceration, other measures exist that are more effective in delivering deterrence, punishment and engendering rehabilitation for the future of Emil and his family.

Unfortunately, the rise of the twenty first century will be known as the period in our history where millions of young individuals, similarly situated as Emil, have been poisoned with pain killers, distributed to millions of our young by the unchecked billion dollar pharmaceutical firms.

The prescription to Oxycodone have made billions of dollars for the Mega Pharmaceutical Corporations, local pharmacies, institutionalized physicians and the Lobbyists; at the price of millions of lives killed and heart breaking pain to the of families grieved by the loss of the lives or minds of loved ones due to drug induced psychosis.

Like Noah from the old testament who discovered how to make wine, who was the first recorded alcoholic, the victims to oxycodone knew not of the ultimate deadly consequences of this terribly mind reconstructive drug and its highly addictive elements until their mind, body and soul was so consumed that it was beyond rehabilitation.  The commentary to the Old Testament, justifies and encourages compassion and forgiveness for Noah's addiction since he knew not that he was playing with fire when he began to drink his homemade wines until it was too late for him.  So too should the victims of prescribed pain-killers, who were unknowingly lured into the addiction by systematic doctors with white robes and prescription pads until it was too late and the addicts were trapped in the vicious circle of addiction, be treated with compassion.  The addict consumes the drug more and more because their tolerance appetite increased, and many began to commit crimes to facilitate their drug addictions. Emil is the direct byproduct/addict turned criminal created by the 21st century big pharmaceutical business in the United States.

Mr. Sosunov was born on October 10, 1990, in Russia. He had a good childhood and was loved and cared for by his father and mother. Emil married Daniella on June 4, 2017, in Brooklyn N.Y. All his life, prior to his addiction to Oxycodone, Emil worked hard at every available job to him so that he could help his parents and ultimately build his own family. Although he had experimented with party drugs, he never used heroin and was not addicted to any type of drug. On or about July 0f 2014, he and his wife were in a terrible car accident, (Please See photo attached). Their car was hit by a Dodge Ram 1500 pickup truck at high speed.

As a result, Emil's lower back, shoulders, and hips were injured. Emil, despite being a strong young man prior to the accident, was bedridden for one month and it took him eight months to recover. In the process of his recovery he had become an addict to prescribed Oxycodone. The drug was more powerful than anything he had ever tried or even imagined. As an addict to Oxycodone, he began to alternate his choice of drugs and looked for ways to maximize profit in distributing Oxycodone to satisfy his own growing appetite for the drug.

He used his own, his family's and friends' prescriptions to digest more pills for himself. But Emil was not a dealer of Oxycodone for purely monetary gain until the incarceration of his co-conspirator Alex Mitselmakher. Alex Mitselmakher is much older than Emil and his wife. Alex Mitselmakher was Emil's father in-law's best friend and Mitselmakher was also godfather to Emil's wife. Unlike as stated in the PSR at page 14, par. 40, Alex Mitselmakher was arrested many months prior to Emil. Mitselmakher's distribution of Oxycodone had absolutely nothing to do with Emil, who was just peddling enough of the drug to supply his own addiction. It was Mitselmakher, after his federal detention, who persuaded Emil, an addict searching for more of the drug by any means, through excellent prowess of persuasion and family ties, to take over and continue some of Mitselmakher's drug activities and store the profits for Mitselmakher. At the time of Emil's arrest, only two months after he began to be the arrant boy for Mitselmakher, the only cash found in Emil's apartment at the time of his arrest was in an envelope marked for Mr. Mitselmakher.

Emil has been able to be completely drug free from the time of his arrest for fear of detention. But in the future, he needs tools and professional guidance so as not to relapse. While sober, he certainly understands the seriousness of his crime and the responsibilities that he personally carries in the conspiracy to unlawfully distribute Oxycodone. Unfortunately for Emil,

his appreciation for the crime he was involved in did not come in time and at a great cost to him and his family. The fateful lesson in this case for Mr. Sosunov of addiction, arrest, prosecution and conviction has caused an otherwise a good hard young man much grief and pain. He prays now only for a chance to return to his family so that his son would not grow up without the guidance of his father and not turn to the streets. Emil has made an attempt, as much as possible at this juncture, to show his remorse and acceptance of responsibility to our society by staying drug free, waiving many of his substantive rights, admitting his conduct and pleading guilty to his involvement in the offense. These actions have assisted his family in the rebuilding process and the government and the judiciary in facilitating the administration of justice.

As this Court is aware, in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure was to declare the Guidelines merely advisory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). After Booker, federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. §3553(a)(2). In Nelson v. United States, 129 S.Ct. 890 (2009/0, the Supreme Court reemphasized that the guidelines are both advisory and not to be presumed reasonable.

Mr. Sosunov completely accepts responsibility for his conduct in this case. He has been able to abstain from the most addictive drug known to man, the synthetic heroin also known as Oxycodone. Even when the Guidelines were mandatory, post-offense rehabilitation was a permissible ground for a downward departure. United States v. Garcia, 926 F.2d 125 (2nd Cir. 1991); United States v. Rudolph, 190 F.3d 720, 722-23 (6th Cir 1999); United States v. Fagan, 162

F.3d 1280, 1284-85 (10th Cir. 1998;. After the Guidelines were made advisory, this conduct becomes even more important at sentencing. Counsel for defendant respectfully asks that this Court take these factors into consideration under § 3553(a) in determining that a sentence below the sentencing guideline range is necessary to achieve the ends justice in Emil particular case.

In *Gull, the* Supreme Court upheld a sentence of 36 months' probation imposed on a drug distribution defendant, who himself may have been an addict, facing an advisory guidelines range of 30 to 37 months imprisonment. In so finding, the Supreme Court explained that "probation is not granted out of a spirit of leniency…[and] is not merely letting an offender of easily ….[P]robation… conditions imposed on an individual can have a significant impact on both that person and society…" Gall, 128 S.Ct. at 596, n4 (internal citations and quotation marks omitted). Indeed, The Supreme Court noted that probation is a substantial punishment. "Offenders on probation are nonetheless subjected to several standard conditions that substantially restrict their liberty,". In this case, Sosunov's conviction, imposed drug programs and probationary sentence will restrict his liberties for at least 60 months of his life, with a complete oversight by the probation department monitoring his rehabilitative process with a prison alternative in the event Emil relapses.

This conviction and its sentence, even if probation, will be a life long imposition of hardship on Mr. Sosunov. His employment options, here in the United States, and licenses and permits he may need for work will be limited. In his case, probation is not simply a lenient option because of strict and time consuming requirements of being supervised and reporting to probation. He will carry the heavy burden of this federal felony conviction for the rest of his life in the United States. It is respectfully submitted, that release on probation under conditions designed to fit this particular situation will effectively satisfy the appropriate specific and general deterrent of similarly situated individuals. It would reflect the seriousness of the instant offense, the goals of punishment, personal

as well as communal deterrence, protection of the public and just as important would take into account the mitigating factors unique to Mr. Sosunov presented herein.

Accordingly, the Defendant respectfully requests that this Court take into consideration the above factors and sentence Mr. Sosunov to probation with other conditions that seem Just and Proper to this Honorable Court and are sufficient to achieve the goals of sentencing under § 3553(a)(2).

Respectfully submitted,

_____/s/_____
Albert Dayan, Esq.
Attorney for the Defendant
80-02 Kew Gardens Road, Suite 902
Kew Gardens, New York 11415
(718) 268-9400 (voice)
(718) 268-9404 (facsimile)
dayanlaw@aol.com